## ISRAEL v. COLLINS.

### No. 19,089; January 14, 1893.

#### 31 Pac. 1126.

Quieting Title—Description.—In an Action to Quiet Title, plaintiff described the land in question as "the west eighty acres of Pueblo lot numbered 1258, according to the Pasco map of the city of San Diego." As evidence of her title, plaintiff introduced a deed from the city, from which both parties claimed, wherein was conveyed to her a lot described as "being that lot of land containing eighty acres, and situate north of and immediately adjoining the eighty-acre lot granted to P." Plaintiff attempted to prove the location of the lot granted to P., but the only evidence of such grant was an entry in the official books of the city, showing that her petition for a lot had been filed, and the maps put in evidence were such that only a hazardous guess could be arrived at as to the location of the lands she had petitioned for. Plaintiff also put in evidence, in proof of a subsequent grant which it was claimed was made to amend the description of the land in the former deed, a resolution of the city's trustees that eighty acres of land out of the western part of Pueblo lot No. 1258 be deeded to plaintiff, the same having been sold her by a former board, and a deed given without a proper description of the land. The resolution was signed by one of the trustees and the secretary of the board, and the trustee testified that he signed and acknowledged a deed pursuant to the resolution, but did not deliver it, as others were to sign it, and he did not know what became of it. It appeared that the deed was never delivered directly to plaintiff, and that neither she nor her husband ever saw it or had actual possession of it. No offer was made to prove its contents except by the resolution of the trustees. Plaintiff was never in possession of the lot which she claimed, and never improved it. Held, that she was properly nonsuited.

APPEAL from Superior Court, San Diego County; George Puterbaugh, Judge.

Action to quiet title by Mary A. Israel against Charles Collins. From a judgment nonsuiting plaintiff she appeals. Affirmed.

Gibson & Titus for appellant; Conklin & Hughes for respondent.

48

VANCLIEF, C.—Action to quiet title to a lot of land situate in the city of San Diego. After the close of the evidence in chief on the part of the plaintiff, the court, on motion of the defendant, rendered a judgment nonsuiting the plaintiff, and the appeal is from this judgment, upon the judgment-roll, including a bill of exceptions.

The complaint is in the usual form, and the answer denies plaintiff's alleged title. The complaint describes the land in question as follows: ''The west eighty (80) acres of Pueblo lot numbered one thousand two hundred and fifty-eight (1,258) according to the Pasco map of the city of San Diego''; and it is admitted that the city of San Diego was the owner of this lot on the twelfth day of February, 1889, and that both parties claimed title from that city. As evidence of her title the plaintiff introduced a deed to her from the city of a lot described as follows: ''Situate in the said city, and more particularly described as follows: Being that lot of land containing (80) eighty acres, and situate north of and immediately adjoining the (80) eighty acre lot granted to May Pollock, in consideration of and for a lot of land sold by former trustees, which good and sufficient reasons were shown belonged to Mary A. Israel, according to the official map of the said city made by Charles H. Poole, A. D. 1856, and on file in the office of the secretary of said board'' (of trustees of the city). It will be observed that this description by no means identifies the lot described as that described in the complaint. It does not describe it as being numbered; nor does it refer to the Pasco map, for the reason, doubtless, that the Pasco map was not made until May, 1870, more than a year after the deed was executed.

For the purpose of applying the description to the lot in question the plaintiff introduced the Poole map referred to; but it appeared, and is admitted, that the Poole map does not include any part of the lot numbered 1258 on Pasco's map. For the same purpose the plaintiff attempted to prove the location of the lot said to have been granted to May Pollock, but failed to prove any grant to Pollock, or that Pollock ever possessed or claimed any land south of, or adjoining, lot 1258, as located on Pasco's map. The only evidence relating to a grant to Pollock are the following entries in official books of the city:

"San Diego, Jan. 21, 1869.

"To the Honorable Board of Trustees:

"I beg leave to ask your honorable board for eighty acres N. W. 1,773, and your petitioner will comply with the conditions imposed in like cases.

"MAY POLLOCK."

Indorsed: "Petition of May Pollock."

In another book was the following:

"No. 212.     Date, Jan. 21, 1869. Name of applicant, May Pollock. Description, 80 acres N. W. 1,773."

There is no evidence that any action was ever taken upon this petition other than to file it and make the above entry. These acts evince no official recognition of the description in the petition as a correct or intelligible description of any land belonging to the city, and without extraneous aid the description is unintelligible. The only extraneous evidence which can be claimed to touch it is that there is a lot on each of the maps above named numbered 1773, but very different in shape, and apparently different in area. The maps appear to be on different scales, though no scale or point of compass appears on the copy of either in the transcript. On the Pasco map, lot No. 1258 adjoins one side of No. 1773 (probably the northern side), but the junction extends only about one-half the length of lot 1773, while the other half of the same side is bounded by lot numbered 1257 on the Pasco map; but neither of the lots numbered, respectively, 1257 and 1258, is laid down on the Poole map. From all this I think nothing more definite than a very hazardous guess can be arrived at, even as to the intended location of the eighty acres petitioned for by Pollock.

Plaintiff next attempted to prove a subsequent grant which she says was made for the purpose of amending the description of the land intended to be conveyed by the aforesaid grant of February 12, 1869, and for this purpose read in evidence the following resolutions of the city's trustees, passed at a regular meeting December 8, 1870:

"Resolved, that eighty acres of land out of Pueblo lot (western part) No. 1,258 be deeded to Mrs. Mary A. Israel, the same land having been sold to her February 19, 1869, by

a former board, and deed given without a proper description of the land.

> "JAMES McCOY,
> "A. B. McKEAN, Secretary."

James McCoy testified that the above is his signature, and that he was one of the city trustees at the time the resolution was adopted; that as one of the trustees he signed and acknowledged a deed pursuant to that resolution, which passed out of his hands, and he did not know what became of it. He did not deliver the deed, as others were to sign it with him. Supposes the deed was drawn by the secretary in whose office he signed it, and that, if it was executed by the other trustees, and delivered, it must have been delivered by the secretary. D. K. Israel, husband of the plaintiff, testified that Judge Hayes was attending to the matter for his wife; that witness had delivered the old deed to him with other papers pertaining to the matter; and that Hayes had died about ten years before the trial. The testimony of this witness further tended to prove that, if the deed had been delivered at all, it might have been delivered to Hayes for his wife, and that diligent search had been made for it without success. It appeared that the alleged second deed was never delivered by any person directly to plaintiff, and that neither she nor her husband ever saw it or had actual possession of it; but no offer was made to prove its contents as to description of the land, or otherwise, except as above stated. D. K. Israel testified that by his order a survey had been made for his wife of the "west eighty acres of Pueblo lot 1258," but he did not remember when, nor is there any evidence as to the boundary lines by that survey. He further testified that he had paid taxes for his wife on "west half of lot 1258" for twelve years between 1872 and 1887, and that all the receipts therefor were in his name, except two, which were in the name of his wife. It appears that these receipts were put in evidence, but the record contains no copies of them, and it does not appear to whom the lot was assessed. The plaintiff was never in possession of any lot which she claims to have purchased from the city, and never improved any such lot. The only evidence of payment of any consideration for the lot claimed is a ledger entry as follows: "1869. Dr. Mary A. Israel. Feb. 18. To 80 acres N. of Pollock's, $1:00." "Cr. Feb.

18. By cash in full, $1.00.'' I think the deed of February 12, 1869, is void for uncertainty in its description of the land, and that the evidence has no substantial tendency to prove that the alleged second deed was ever executed by the board of trustees of the city, and would not have justified a finding to that effect. One member of the board could not have executed such a deed: See acts creating and incorporating this board of trustees, approved January 30 and April 28, 1852 (Stats. 1852, pp. 223, 225). It follows that the plaintiff was properly nonsuited and that the judgment should be affirmed.

We concur: Belcher, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.